[No. B058336. Second Dist., Div. Five. May 20, 1992.]

STEPHEN N. HONIG, Plaintiff and Appellant, v.
FINANCIAL CORPORATION OF AMERICA et al., Defendants and
Respondents.

COUNSEL

Matthews & Evans and William D. Evans for Plaintiff and Appellant.

Jeffer, Mangels, Butler & Marmaro, Louise Ann Fernandez, Neil O. Andrus, Fenigstein & Kaufman, Harold J. Tomin and Jonathan W. Biddle for Defendants and Respondents.

OPINION

**ASHBY, J.**—Appellant and plaintiff Stephen N. Honig filed a multicount civil suit against respondent and defendant New West Federal Savings and Loan Association.[1] Also named in the suit were five employees of respondent New West, respondents and defendants Robert Blain, Thomas Kennett, Sheila Wilson, John Hamilton and Michael Fleutsch. The trial court denied appellant's motion to amend his complaint and at the same hearing granted respondents' summary judgment motions. We reverse, finding the trial court abused its discretion in refusing to permit the amendment.

### FACTS

Appellant filed his complaint on February 5, 1988. In the complaint appellant alleged he began his employment with respondent New West in June 1982 with the responsibility of developing and maintaining "Jumbo" certificates of deposits. Further, appellant stated that on numerous occasions respondent New West represented to him he would be continuously employed as long as he performed satisfactorily. Appellant alleged that in

---

[1] The complaint named as defendants Financial Corporation of America, American Savings and Loan and FCA Asset Management, which jointly operated American Savings and Loan savings banks. Subsequently, the Federal Savings and Loan Insurance Corporation (FSLIC) appointed New West Federal Savings and Loan Association as receiver for the banks and New West was added as a party defendant. For ease of reference, we refer to these parties, who are also respondents on appeal, collectively as respondent New West.

contravention of public policy appellant was forced to commit illegal acts, fraud and misrepresentation in the manner in which he was directed to offer the certificates of deposits and appellant was required to decline to reveal material facts to investors. Appellant asserted that beginning in January 1987, respondents commenced a "campaign of harassment, threats, humiliation, debasement and intimidation against" appellant. The complaint asserted causes of action for (1) attempted constructive termination/breach of public policy, (2) intentional fraud and deceit, (3) negligent fraud and deceit, (4) breach of covenant of good faith and fair dealing, (5) breach of contract, (6) conspiracy, (7) intentional infliction of emotional distress, and (8) interference with prospective economic advantage. At the time the complaint was filed, appellant had not left respondent New West's employment. A fellow employee had been discharged in August 1987, and six others discharged in October 1987. Appellant contended he filed his suit as a preventative measure fearing his discharge was imminent.

According to appellant, after the initial complaint was filed, respondent New West demanded appellant attend a meeting of its ethics committee. Appellant's request that his counsel be allowed to attend the meeting was refused. Appellant submitted to respondent New West a four-page written statement in which he explained his position that he would not discuss the pending lawsuit with them. Appellant's requests that all inquiries be directed to him in writing so he could consult counsel were also refused. Additional communications passed between the parties in which appellant contended that he was entitled to counsel, that "trumped up" charges had been created, that the ethics committee's actions were in retaliation for the filing of his lawsuit and that he was acting under advice of counsel. On April 15, 1988, respondent New West discharged appellant stating he was being fired for insubordination. At the time, appellant was earning approximately $108,000.

The matter was assigned to a fast track court, a court under the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.) Extensive discovery was conducted, including seven days of deposing appellant. Respondents thoroughly deposed appellant on the events which occurred subsequent to the filing of the initial complaint. Extensive inquiry was made of the events surrounding the ethics committee and appellant's discharge on April 15, 1988. Additionally, questions were asked relating to his search for employment after being fired. During the deposition, appellant explained that he thought he had difficulty finding employment because he was blackballed and because he told prospective employers he had been fired.

On September 4, 1990, approximately two months before the scheduled trial, respondents filed summary judgment motions. On October 4, 1990,

appellant filed an opposition to the motions as well as a motion to amend his complaint. The proposed amendment added facts which occurred after the initial complaint. It asserted a cause of action for wrongful discharge in violation of public policy contending he could not be fired for requesting advice of counsel. Additionally, it was contended the charge of insubordination was created as a pretext for the termination. The amended complaint also pled a cause of action for defamation asserting that after the termination the false reason for the discharge (gross insubordination) was repeated to others and that appellant was forced to reveal the false reason to prospective employers.

The court granted the summary judgment motions and denied appellant's motion to amend. Finding the court abused its discretion in refusing the amendment, we reverse.

DISCUSSION

JURISDICTION

Before we consider the merits, we must address the contention that California courts do not have jurisdiction to hear this matter.

■ Respondents contend the matter cannot be heard by our state courts because the federal banking laws reserve exclusive jurisdiction in the federal courts. The argument is premised upon 12 Code of Federal Regulations, section 563.39 which covers employment contracts for savings associations controlled by the Office of Thrift Supervision, formerly the Federal Home Loan Bank Board (FHLBB). That section provides in relevant part: "(a) *General.* A savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. . . . [¶] (b) *Required provisions.* Each employment contract shall provide that: [¶] (1) The association's board of directors may terminate the officer or employee's employment at any time, but any termination by the association's board of directors other than termination for cause, shall not prejudice the officer or employee's right to compensation or other benefits under the contract. The officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause. Termination for cause shall include termination because of the officer or employee's personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, willful violation of any law, rule, or regulation . . . or final cease-and-desist order, or material breach of any provision of the contract."

The argument that California courts lack jurisdiction in these matters was recently rejected in *Hall* v. *Great Western Bank* (1991) 231 Cal.App.3d 713 [282 Cal.Rptr. 640]. Although *Hall* was a case based upon charges of wrongful termination in violation of public policy, the case did not limit its ruling to such claims as contended by respondents. The court held that section 563.39 does not preempt state law. (231 Cal.App.3d at pp. 717, 721-722; *Cole* v. *Carteret Sav. Bank* (1988) 224 N.J.Super. 446 [540 A.2d 923, 926].) Additionally, we note that appellant's claim is based upon a discharge in violation of public policy. Thus, even if *Hall* was limited as contended by respondents, California courts have jurisdiction to consider appellant's claims.

AMENDMENT

■ We are persuaded by appellant's contention that the trial court abused its discretion in refusing him the right to amend his complaint.

■ In the furtherance of justice, trial courts may allow amendments to pleadings and if necessary, postpone trial. (Code Civ. Proc. § 473.) Motions to amend are appropriately granted as late as the first day of trial (e.g., *Higgins* v. *Del Faro* (1981) 123 Cal.App.3d 558 [176 Cal.Rptr. 704]) or even during trial (*Rainer* v. *Community Memorial Hosp.* (1971) 18 Cal.App.3d 240, 251-256 [95 Cal.Rptr. 901]) if the defendant is alerted to the charges by the factual allegations, no matter how framed (*Hirsa* v. *Superior Court* (1981) 118 Cal.App.3d 486, 489 [173 Cal.Rptr. 418]) and the defendant will not be prejudiced. "When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict 'is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling.'" (*Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 296-297 [216 Cal.Rptr. 443, 702 P.2d 601].) If the original pleading has not framed the issues in an articulate and precise manner, a plaintiff should not be precluded from having a trial on the merits.

■ Appellant's complaint was filed in February 1988. The matter was on the fast track calendar, extensive discovery was conducted, and trial was set for November 13, 1990. Respondents filed their summary judgment motions in September 1990. When appellant filed his opposition to the motions, he also filed a motion to amend. The amended complaint contained additional paragraphs relating to the claim for wrongful termination based upon the April 8, 1988, termination and the facts leading up to that discharge. Additionally, the proposed amended complaint added a charge of

defamation based upon spreading to others the reason for the discharge and for the publication occurring when appellant was forced to explain to prospective employers he had been fired.

The proposed amendments finished telling the story begun in the original complaint. The added assertions described the continuation of the events asserted in the initial pleading. The parties were fully aware of the events which occurred subsequent to the original charges, including the April 8, 1988, termination and the facts which preceded the actual discharge. Additionally, respondents were fully aware of appellant's claim that he had been blackballed and that he was unable to find new employment because he told prospective employers he had been fired. Appellant was fully deposed on these issues. Thus, no prejudice would have resulted had the amendments been permitted.[2]

█ Respondents also contend it was improper to allow the amendments because the statute of limitations on the two additional causes of action would have run and that the relation back doctrine would not be applicable. We are not persuaded by this analysis.

"An amended complaint relates back to the original complaint, and thus avoids the statute of limitations as a bar . . . if it: (1) rests on the same general set of facts as the original complaint; and (2) refers to the same accident and same injuries as the original complaint." (*Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 151 [216 Cal.Rptr. 405, 702 P.2d 563]; *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121].) The same general set of facts includes the same operative facts; a change in legal theory is permissible. (*Goldman v. Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085, 1094-1095 [265 Cal.Rptr. 294].) A claim for different damages does not indicate there are different injuries. Rather, injuries may encompass the same primary rights. (*Rowland v. Superior Court (Zappia)* (1985) 171 Cal.App.3d 1214, 1217-1218 [217 Cal.Rptr. 786].)

Here, the facts alleged in the complaint as well as the amended complaint all related to appellant's discharge. (*Goldman v. Wilsey Foods, supra,* 216

---

[2]Respondent New West argues it was prejudiced because some of the employees who had information relevant to the later circumstances were no longer employed. This, however, does not necessarily mean these persons could not be found. Thus, New West's assertion of prejudice is speculative.

Further, respondents' citation to *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159 [267 Cal.Rptr. 523] and *Permalab-Metalab Equipment Corp. v. Maryland Cas. Co.* (1972) 25 Cal.App.3d 465, 470-472 [102 Cal.Rptr. 26] to argue the amendment was not appropriate is not persuasive because in these cases prejudice was found.

Cal.App.3d 1085 [statutory civil rights claim for emotional distress related back to common law claim, as both based upon abusive language, religious harassment and discrimination].) Thus, as shown above, the amended complaint related to the same general set of facts and the same accident. They were in the chain of events which were originally pled. (Cf. *Olson* v. *Volkswagen of America* (1988) 201 Cal.App.3d 1437, 1443 [247 Cal.Rptr. 719].)

Additionally, all injuries were those which were expected from a wrongful discharge, including those asserted in the defamation cause of action. It is expected that fired employees may have difficulty in obtaining new employment and that allegations surrounding their discharge may be spread to others. When an employer discharges an employee it is not unusual for the employer to defend the termination by reasserting the stated reasons for it. The claims of wrongful termination and defamation are inextricably intertwined in these circumstances. Thus, although appellant's amended complaint asserted two additional causes of action, they related back to the original complaint. While reframing appellant's claims, the proposed amendments did not significantly add new dimensions to the suit.

 In finding that the amendment should have been allowed, we are well aware of the purposes behind fast track, which we support. Matters should be promptly resolved. However, if an amendment is appropriate the trial court should continue the trial if necessary, even if the matter is on fast track. (*Prudential-Bach Securities, Inc.* v. *Superior Court* (1988) 201 Cal.App.3d 924, 925 [247 Cal.Rptr. 477]; *Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 490 [282 Cal.Rptr. 530]; cf. *Miller* v. *Superior Court* (1990) 221 Cal.App.3d 1200, 1206-1212 [270 Cal.Rptr. 766]; *Laborers' Internat. Union of North America* v. *El Dorado Landscape Co.* (1989) 208 Cal.App.3d 993, 1000-1007 [256 Cal.Rptr. 632]; *Hock* v. *Superior Court* (1990) 221 Cal.App.3d 670, 673-674 [270 Cal.Rptr. 579].)

The judgment is reversed. Costs on appeal are awarded to appellant.

Turner, P. J., and Boren, J., concurred.